# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS D. SELGAS | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-0725-S |
| | § | (CRIMINAL ACTION NO. 3:18-CR-0356-S-1) |
| UNITED STATES OF AMERICA | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Movant Thomas D. Selgas's Motion Under 28 U.S.C. § 2255 to Vacate,

Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion") [ECF No. 1]. The Court

has reviewed the Motion, the Supporting Brief for the Motion ("Movant's Brief") [ECF No. 2],

the Declaration of Movant ("Declaration") [ECF No. 3], the Government's Response to the Motion

("Response") [ECF No. 11], Movant's Reply to the Response [ECF No. 13], and the applicable

law. For the following reasons, the Court **DENIES** the Motion.

## I. BACKGROUND

After a trial, a jury found Thomas D. Selgas ("Movant") guilty of conspiracy to defraud

the United States and evasion of tax payments for the years 1998 through 2002 and 2005. CR ECF

No. 184.[1] Movant underreported the income of a partnership, filed false tax returns based on a

theory that the Fifth Circuit has defined as "frivolous,"[2] and used his attorney's Interest on

Lawyers' Trust Accounts ("IOLTA")[3] account for personal expenditures. *See United States v.*

*Green*, 47 F.4th 279, 286-87 (5th Cir. 2022); *United States v. Selgas (Selgas III)*,

---

[1] ECF filings from the related criminal case (3:18-CR-0356-S-1) will be referred to as "CR ECF."

[2] *MyMail Ltd. v. Comm'r*, 498 F. App'x 388, 390 (5th Cir. 2012) (citation omitted).

[3] "An IOLTA account is an account where most lawyers have funds for their clients . . . . If money is received from [a] lawsuit, that money is put in that particular account specifically for the clients of the lawyer." CR ECF No. 203 at 228:17-22.

No. 3:18-CR-0356-S, 2020 WL 1940838, at *2, *4 (N.D. Tex. Apr. 21, 2020). Movant's co-defendant in the underlying criminal case, John Green, was Movant's lawyer for several years while Movant engaged in tax evasion, assisting with concealing Movant's "income and assets from [Internal Revenue Service ("IRS")] collection efforts." *Green*, 47 F.4th at 285-86. Green also represented Movant and Movant's wife Michelle Selgas before the United States Tax Court in challenges to their 1997-2002 tax liabilities. *Id.* at 286 n.2, 291; CR ECF No. 203 at 222:8-17.

Movant started a company called ChipData, Inc., with other business associates. CR ECF No. 360-7 at 2 ¶ 5; CR ECF No. 204 at 40:17-24, 119:14-19. ChipData did not withhold the full amount of federal income taxes from Movant's paychecks for the years 1997-2002, and Movant did not subsequently pay the federal income taxes he owed that would have been covered by paycheck withholdings. CR ECF No. 360-1 at 7-8, 15; CR ECF No. 203 at 215:11-216:25, 222:1-7; CR ECF No. 204 at 72:18-74:18. Because Movant reported certain income under his wife's name, the IRS sent her a notice of deficiency, giving her the opportunity to dispute this deficiency in Tax Court. *See* CR ECF No. 204 at 71:1-20; CR ECF No. 203 at 180:13-181:4. Consequently, Michelle Selgas was the petitioner in Tax Court proceedings disputing the IRS's decision to collect income taxes from her for tax years 1997-2001.[4] *See* CR ECF No. 359-3 at 1; CR ECF No. 205 at 89:21-91:15.

---

[4] Michelle Selgas "was not gainfully employed during the tax years at issue," but "her lack of personal employment [did] not relieve her of any income tax liabilities for the tax years 1997, 1998, 1999, 2000 and 2001, because she was married during those years and living in Texas, which is a community property state." CR ECF No. 359-1 at 7. Thus, she was "liable for the income tax on one half of the income earned by her husband during the years in question." *Id.*; *see also* CR ECF No. 204 at 126:25-127:8 (Texas is "what's considered a community property state, which means what the husband has belongs 50 percent to the wife, and what the wife has belongs 50 percent to the husband, and so it's considered a 50/50 split.").

Movant and Michelle Selgas (collectively, "the Selgases") were in Tax Court in 2004 and 2005[5] to dispute whether (1) ChipData had withheld wages for the years 1997-2002 so that the Selgases did not owe a tax debt, and (2) the IRS sent valid notices of deficiency to the Selgases. *Green*, 47 F.4th at 286 n.2; *Selgas v. Comm'r (Selgas II)*, 475 F.3d 697, 698-700 (5th Cir. 2007); CR ECF No. 203 at 214:16-216:25, 220:9-221:24. In Michelle Selgas's case, the Tax Court held that the notices of deficiency for the years 1997-2001 were valid and that the Selgases' tax liabilities had not been paid in full. *See* CR ECF No. 359-3 at 4-6. In the separate case where Movant was the petitioner, the Tax Court concluded that Movant was entitled to credit for withheld wages for tax year 2002 but determined that he still owed a tax debt for that year. *See* CR ECF No. 360-2; CR ECF No. 360-1 at 6-9, 14. The Tax Court ordered the Selgases to pay their delinquent taxes for those years. *See* CR ECF No. 359-3 at 6 (tax years 1997-2001); CR ECF No. 360-2 (tax year 2002). The Fifth Circuit affirmed both Tax Court cases. *See Selgas II*, 475 F.3d at 701; *Selgas v. Comm'r (Selgas I)*, 209 F. App'x 383, 2006 WL 3613248 (5th Cir. 2006).

Movant later became a partner at MyMail, Ltd., where he acted as "the director, manager, [and] owner."[6] CR ECF No. 202 at 124:8-19; *Green*, 47 F.4th at 285. In mid-February 2006, a Certified Public Accountant ("CPA") prepared and filed MyMail's U.S. Return of Partnership Income, Form 1065 for tax year 2005 ("Original 2005 Partnership Return"). *See* CR ECF No. 202 at 35:18-23, 40:9-19; CR ECF No. 353-8 at 2. The Original 2005 Partnership Return reported a total income for MyMail of $6,842,946. *See* CR ECF No. 353-8 at 2. Around April 2006, the same accountant met with Green, Movant, and other MyMail representatives to discuss amending the Original 2005 Partnership Return. *See* CR ECF No. 202 at 47:25-49:24, 56:14-18; CR ECF

---

[5] *See* CR ECF No. 359-7 (Michelle Selgas); CR ECF No. 360-2 (Movant).

[6] Green was an attorney for MyMail. *See* CR ECF No. 202 at 125:7-1.

No. 355-16. Movant and Green based the proposed amendment on a discredited theory that defines the "constitutional value" of a dollar as 371 and 1/4 grains of silver ("lawful dollar" theory).[7] *Green*, 47 F.4th at 285-86, 291-92. The "practical effect of employing this theory was to significantly underreport the amount of income that MyMail and the Selgases actually received." *Id.* at 286. The original accountant refused to file an amended partnership return based on this theory because it did not have "a good chance for success upon examination" by the IRS. CR ECF No. 202 at 57:9-17; *see also Green*, 47 F.4th at 286.

Following that refusal, Movant and Green hired another CPA, James Pennington, to file the amended return reflecting their requested changes based on the "lawful dollar" theory ("Amended 2005 Partnership Return"). *See Green*, 47 F.4th at 286; CR ECF No. 355-15. The Amended 2005 Partnership Return, filed in October 2006, reported a total income for MyMail of $729,846 rather than $6,842,946. *See Green*, 47 F.4th at 286; CR ECF No. 353-9 at 2. It significantly reduced Michelle Selgas's and Movant's personal reported distributions from MyMail as well. *Green*, 47 F.4th at 286. The record thus shows that Movant continued to willfully evade paying taxes while serving as a partner at MyMail. *Green*, 47 F.4th at 285-86; *Selgas III*, 2020 WL 1940838, at *2-*3.

Pennington also prepared tax returns for the Selgases for the years 1998-2002. CR ECF No. 207 at 10:11-11:6. The tax returns drafted by Pennington incorrectly reported withheld payments that the Tax Court held were not made on behalf of the Selgases. *See Green*, 47 F.4th at 286 n.2; *see also* CR ECF No. 354-3 at 4 (line 58); CR ECF No. 204 at 71:23-76:6, 77:1-12. The IRS initially processed the Pennington returns but failed to identify that the returns

---

[7] The United States Court of Appeals for the Fifth Circuit in *Green* adopted Movant's language describing this as the "lawful dollar" theory. *See Green*, 47 F.4th at 286, 291-93. The Court adopts that terminology.

contradicted the Tax Court's decision. *See* CR ECF No. 204 at 75:2-77:8. The IRS subsequently

readjusted the returns to conform with the Tax Court's ruling. *See Green*, 47 F.4th at 286 n.2.

In October 2006, Green drafted a "Statement to the Internal Revenue Service"

("2005 Statement") for the Selgases to file instead of proper income tax return. *Id.* at 286. The

2005 Statement did not include the correct tax amount due because it underreported the Selgases'

income by relying on the "lawful dollar" theory. *Id.* ("By using the discredited 'lawful dollar'

theory, the [2005] Statement significantly understated the Selgases' actual income.").

Movant's improper actions extended beyond filing noncompliant tax returns. The Selgases

did not have bank accounts in their own names; instead, they deposited over $850,000 into Green's

IOLTA accounts from 2007 to at least 2017. *Id.*; *Selgas III*, 2020 WL 1940838, at *2, *4, *6; CR

ECF No. 360-14. It is an "improper use of an IOLTA account" for a lawyer to "basically turn his

commingled IOLTA account into . . . what's basically a bank account for an individual client[.]"

CR ECF No. 203 at 63:20-64:21. Green paid the Selgases' expenses and credit-card bills out of

his IOLTA accounts. *Green*, 47 F.4th at 287, 292. Additionally, in 2012, Movant purported to sell

real estate in Athens, Texas, for $8,400 in "lawful money" (i.e., money valued under the "lawful

dollar" theory) to a trust controlled by a family member. CR ECF No. 358-2 at 2-4; *Green*, 47

F.4th at 287; *Selgas III*, 2020 WL 1940838, at *6.

In May 2014, IRS Revenue Officer Jonathan Daniel attempted to collect the Selgases' tax

debt but could not get in contact with them. *Green*, 47 F.4th at 287. He sent multiple letters to the

Selgases and Green seeking information about the Selgases' ability to pay their delinquent taxes.[8]

*Id.* The letters originally either went unanswered or were returned to the IRS as undeliverable. *Id.*;

---

[8] Such letters included notices informing the Selgases that the IRS filed federal tax liens, which are documents "filed with the county as well as with the state to inform the general public that a taxpayer has balance due amounts owed to the federal government." CR ECF No. 203 at 195:17-20, 199:14-200:13.

CR ECF No. 203 at 200:5-204:8. Daniel sent another letter to Green in July 2015 requesting financial information after "finding retirement accounts for the Selgases funded with gold coins." *Green*, 47 F.4th at 287; CR ECF No. 354-14. Green finally responded that the Selgases had paid their taxes but otherwise did not respond to Daniel's requests. *Green*, 47 F.4th at 287. In January 2016, Daniel sent the Selgases and Green a letter explaining that the IRS would seize their assets if the Selgases did not pay their tax debt. CR ECF No. 203 at 210:12-211:14; CR ECF No. 354-15 at 3. Ultimately, Daniel ceased his collection efforts in 2018 without success. *See Green*, 47 F.4th at 287; *see also* CR ECF No. 354-5 at 72.

## II. PROCEDURAL HISTORY

In July 2018, a grand jury charged Movant, Michelle Selgas, and Green with Conspiracy to Defraud the United States "for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the IRS in the . . . collection of . . . revenue," in violation of 18 U.S.C. § 371 (Count One). CR ECF No. 1 ¶¶ 12-13.[9] Movant was also charged with Evasion of Payment for Tax Years 1998 through 2002 and 2005, in violation of 26 U.S.C. § 7201 (Count Two). *Id.* ¶¶ 48-49.

Attorney Franklyn Mickelsen initially represented Movant, but Movant moved to substitute Charles McFarland for Mickelsen the day before trial began. CR ECF No. 339 at 5:10-6:25, 20:11-20. The Court allowed McFarland to act as lead counsel but did not allow Mickelson to withdraw at the last minute. *Id.* at 26:25-27:14. Accordingly, Mickelsen continued to represent Movant as co-counsel during the trial. *Id.*; CR ECF No. 340 at 47:10-17; *Green*, 47 F.4th at 287. Specifically, Mickelson consulted with McFarland and Movant at the final pretrial

---

[9] "Michelle Selgas was also charged in Count One with conspiracy and in Count Three with income tax evasion. The district court granted a judgment of acquittal to Michelle [Selgas] prior to submission of the case to the jury." *Green*, 47 F.4th at 287 n.3.

conference and informed the Court that it was "[Movant's] decision, and Mr. McFarland has agreed, [that] Mr. McFarland will be acting as lead counsel." CR ECF No. 339 at 26:25-27:10.

After an eight-day trial, a jury found Movant and Green guilty as charged. *See* CR ECF No. 184; *Green*, 47 F.4th at 287. Movant filed post-judgment motions seeking acquittal or a new trial, which the Court denied. *See Selgas III*, 2020 WL 1940838, at *9; CR ECF No. 246. Movant then filed motions for reconsideration, *see* CR ECF Nos. 272, 274, which the Court also denied, *see* CR ECF Nos. 289, 290.

On June 22, 2021, the Court sentenced Movant to 18 months' imprisonment to be followed by three years of supervised release. CR ECF No. 302 at 2-3.[10] In a consolidated opinion, the Fifth Circuit affirmed Movant's sentence and conviction. *Green*, 47 F.4th at 296.

On March 25, 2024, Movant filed the pending Motion, along with Movant's Brief and Declaration. Movant's claims fall into three general categories: (1) ineffective assistance of counsel ("IAC") claims against Mickelsen, mostly related to Mickelsen's alleged failure to prepare for trial and to understand and adequately present Movant's good-faith defense; (2) claims that the Government suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) claims that the Government elicited false testimony from witnesses in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). *See* Mot. 7-11.

### III. LEGAL STANDARD

Courts can presume that an individual "stands fairly and finally convicted" after conviction and exhaustion or waiver of any right to appeal. *United States v. Frady*, 456 U.S. 152, 164 (1982);

---

[10] McFarland also represented Movant in his sentencing proceedings and called several witnesses, including CPA Pennington. *See* CR ECF No. 340 at 5:7-13, 21:13-22:20, 23:21-24:4, 37:8-14, 50:10-15.

*see United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991). But an individual may move the trial court to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255.

Section 2255 "is reserved for transgressions of constitutional rights" and other narrowly defined injuries that "could not have been raised on direct appeal and[] would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981) (citation omitted). As such, "[t]o justify disturbing a final judgment, [a movant] must show that the sentence was tainted by constitutional or jurisdictional error or that the sentence exceeded the maximum authorized by law." *Scott v. United States*, No. W-09-CR-191, 2012 WL 12919103, at *1 (W.D. Tex. Feb. 28, 2012) (citing, among other sources, *Hill v. United States*, 368 U.S. 424, 426-27 (1962)).

## IV. ANALYSIS

The Court will first address Movant's IAC claims. Next, the Court will examine Movant's *Brady* claims. Finally, the Court will consider Movant's *Napue* violation claims.

### A. Ineffective Assistance of Counsel Claims

Movant claims that his original attorney, Mickelsen, ineffectively represented Movant primarily by (1) failing to prepare for trial and (2) failing to adequately understand Movant's good-faith defense and present that defense to the jury. *See* Movant's Br. 3-23.[11] Movant is not entitled to relief on his IAC claims.

A movant may bring a Sixth Amendment IAC claim "in a collateral proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Courts analyze IAC claims under

---

[11] Movant asserts that he has two separate defenses that warranted a not guilty verdict: that he relied on his attorneys and that he relied on a CPA. Movant's Br. 5. The Court considers these defenses under the umbrella of the good-faith defense because they require that the movant "relied in good faith on a professional" and "made complete disclosure of all the relevant facts." *United States v. Masat*, 948 F.2d 923, 930 (5th Cir. 1991) (citation omitted).

the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Massaro*, 538 U.S. at 505. To prevail, a movant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Therefore, even if a movant establishes that his counsel performed deficiently, he "still must show that he . . . was prejudiced by counsel's errors . . . to prevail." *United States v. Lagos*, 25 F.4th 329, 334 (5th Cir. 2022). Courts have the discretion to "consider either the performance or the prejudice element of the inquiry first," but are not required to "address both components of the inquiry if it is clearer that the [movant] has made an insufficient showing as to one of them." *Id.* at 335 (cleaned up). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

To establish deficient performance, the movant must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The standard for attorney performance is "that of reasonably effective assistance," so a movant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead ha[s] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (cleaned up)).

To establish prejudice, the movant must show "a reasonable probability that, but for the deficient performance of [a movant's] trial counsel, the outcome of his . . . trial would have been different." *White v. Thaler*, 610 F.3d 890, 898-99 (5th Cir. 2010) (citing *Strickland*, 466 U.S. at 694). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency,

that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. A movant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (citation omitted).[12]

The Court agrees with the Government that Movant has essentially repackaged arguments from post-judgment motions asserting that there was insufficient evidence to convict him. *See, e.g.*, CR ECF No. 212. The Court rejected those arguments, *see Selgas III*, 2020 WL 1940838, and Movant's attempt to reframe them as IAC claims fares no better.

As the Government highlights, Movant's IAC claims ignore that McFarland—not Mickelsen—acted as Movant's lead counsel, at Movant's request, for much of the trial. Resp. 19. Over the course of the eight-day jury trial, McFarland cross-examined witnesses, objected to evidence, and engaged in motion practice, but Movant complains only of Mickelsen's performance. *See* Mot. 7, 11. The fact that Movant alleges that only one of his two attorneys performed deficiently undercuts his assertion that he was deprived of his Sixth Amendment right to effective counsel. Resp. 19-20; CR ECF No. 340 at 47:10-17.[13] Regardless, the Court finds Movant's IAC claims against Mickelsen to be devoid of merit.

### i. IAC Claims Related to Tax Years 1998-2002

The IAC claims concerning tax years 1998-2002 fail because Movant cannot establish either that Mickelsen's performance was deficient or that Movant was prejudiced by Mickelsen's performance. Movant argues that Mickelsen did not investigate or address the claims that Movant

---

[12] *See also United States v. Griffin*, 324 F.3d 330, 364 (5th Cir. 2003) ("When the [movant] complains of errors, omissions, or strategic blunders, prejudice is not presumed; bad lawyering, regardless of how bad, does not support the *per se* presumption of prejudice." (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 284-85 (5th Cir. 2000))).

[13] McFarland confirmed at Movant's sentencing hearing that he was lead counsel for Movant during the trial but, when asked by the Court about evidentiary objections he raised for the first time at sentencing, claimed that he "didn't have time to prepare for trial." CR ECF No. 340 at 47:13-17.

evaded taxes for years 1998-2002. Movant's Br. 6-12. Movant claims that he believed in good faith that he did not owe taxes for years 1998-2002 because he filed returns for those years under the advice of his attorney, Green, and CPA, Pennington. *Id.* at 7.

Specifically, Movant asserts that Mickelsen did not sufficiently present a good-faith defense for the following reasons: (1) Mickelsen did not review the Pennington tax returns for 1998-2002 and neither called nor subpoenaed Pennington to testify at trial to explain the returns; (2) he did not review the liens that IRS Officer Daniel allegedly filed improperly in 2014; (3) he did not introduce Movant's W-2c forms from ChipData for 1998-2002 to show that Movant believed ChipData paid his 1998-2002 tax debt from withheld wages; (4) he did not review Government discovery allegedly showing that ChipData sent the W-2c forms in question to the IRS; (5) he "failed to list or call anyone from ChipData to authenticate the W-2c forms"; and (6) he did not review the relevant Tax Court decisions concerning the 1998-2002 taxes. *Id.* at 6-12.

First, Movant's assertion that Mickelsen had a duty to call Pennington because "the returns reflected no tax owed and . . . were filed at the directions of Attorney Green and [CPA] Pennington" is without merit. Movant can only speculate that Pennington would have agreed to testify and what Pennington's testimony might have entailed. Movant's Br. 6-7. To prevail on an IAC claim "based on counsel's failure to call a witness, the [movant] must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). "Claims of uncalled witnesses are disfavored" because the decision to present a witness is "essentially strategic, and speculations as to what uncalled witnesses would have testified is too uncertain."

11

*Gregory v. Thaler*, 601 F.3d 347, 352-53 (5th Cir. 2010) (cleaned up).[14] Movant does not make any showing that Pennington would have been willing to testify and does not specify what Pennington would have said. Further, Movant's claim that the jury "would not have considered that [Movant] evaded taxes for the years 1998 to 2002" if the jury understood that Movant believed he filed returns for those years "under the advice of an attorney and a CPA" is conjecture. Movant's Br. 7. The record reflects that the jury knew that Pennington was a CPA and that Green recommended him to Movant—in other words, the jury knew that Movant purportedly relied on professionals in filing the 1998-2002 returns. *See* CR ECF No. 207 at 10:8-11:6. Thus, Movant's first argument fails.

Movant next asserts that Mickelsen should have reviewed the liens that Daniel prepared and presented documents showing that they were invalid. Movant's Br. 8-9. Movant is mistaken. The possibility of invalid liens was explored though cross-examination of Daniel at trial, and there was "evidence of Green's efforts to frustrate … Daniel's attempts to collect [Movant's] outstanding tax liabilities." *Green*, 47 F.4th at 292; *see also* CR ECF No. 203 at 210:12-25; CR ECF No. 204 at 65:12-67:20, 78:9-18. There was ample evidence that Movant owed taxes for years 1998-2002, knew that he owed taxes for those years, and willfully evaded paying them. *See Selgas III*, 2020 WL 1940838, at *4 (noting that sufficient evidence existed to find Movant guilty, including testimony from Daniel "detailing his efforts to determine [Movant's] ability to pay taxes that [were] owed, and to initiate a collection action, and explaining that Green responded that [Movant] did not owe the Government any taxes" (cleaned up)). Moreover, had Movant's counsel addressed the issue of the IRS liens to Movant's liking, it would not have changed the verdict. *See*

---

[14] These claims are "especially" disfavored if the movant has not provided evidence "indicating the witness[]'s willingness to testify and the substance of the proposed testimony." 601 F.3d at 352 (citing *Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007)).

*id.* at *3 n.4 ("[E]ven if the Government was actually aware of [Movant's] outstanding tax liability, a rational jury could have concluded that by, for example, raising frivolous tax theories as alleged by the Government, attempting to pay in gold, and using IOLTAs, [Green and Movant] knowingly and willfully 'worked to delay, to confuse, to impair and impede the IRS.'" (citation omitted)).

Movant's arguments concerning the W-2c forms, which the Court addresses together, also fail. Movant asserts that Mickelson "did not protect [Movant's] right to show the jury that he had a good-faith belief" that he did not owe taxes for the years 1998-2002 because Mickelson did not move for the Government's production of the ChipData W-2c forms. Movant's Br. 10. But Movant does not explain how Mickelsen's alleged failure to introduce the W-2c forms "sent to [Movant] by ChipData showing that withholding had been paid" prejudiced Movant. *Id.* at 9-10. And Movant offers no support for his claim that Government discovery concerning the W-2c forms "was a crucial piece of the puzzle in showing [Movant's] good-faith belief that his taxes . . . were paid." *Id.* at 9-10. Finally, Movant's contention that Mickelsen should have "list[ed] or call[ed] anyone from ChipData" to authenticate the W-2c forms fails for the same reason as the claim concerning Pennington as a potential witness. Movant's Br. 9-10. Movant does not identify a potential witness, nor does he explain what that witness's testimony would have been. *See Day*, 566 F.3d at 538; *Gregory*, 601 F.3d at 352-53.

The Court considers Movant's claims concerning the Tax Court cases collectively and finds that these claims also fail because Movant does not specify how a lack of evidence or context concerning those cases prejudiced his defense. As explained above, Movant disputes the Tax Court's holding that Movant was not entitled to withholding payments from ChipData for tax years 1998-2002. Movant's Br. 7-8, 10-12. He argues that had Mickelsen reviewed the Tax Court decisions, "he could have prepared a rebuttal or defense to the erroneous . . . claim that a Tax Court

13

ruled [Movant] was not entitled to withholding taxes." *Id.* at 11. But Mickelsen's closing argument contradicts that point because Mickelsen explicitly addressed the withholding credits. *See* CR ECF No. 208 at 58:11-17 (discussing how "[t]he records of the IRS do reflect withholding, so [Movant] . . . g[o]t the benefit of the withholding from his wages by [ChipData]."). [15] Additionally, the jury heard testimony that the IRS adjusted the Pennington returns after the Tax Court ruled against the Selgases on the withholding issue. *See* CR ECF 204 at 73:3-77:12. The evidence at trial showed that both Green and Movant "knew that the Tax Court had ruled that [Movant] had unpaid tax liability." *Green*, 47 F.4th at 291. Accordingly, Movant fails to show any prejudice or deficient performance from Mickelsen's alleged failure to argue that the Tax Court cases supported his defense.

In sum, Movant "presented his good faith defense to the jury, and the jury was properly instructed on the definition of 'good faith,' told that 'good faith' was 'a complete defense to the charges'. . . , and told that it was the Government's burden to prove that [Movant] acted with the requisite mental state." *Green*, 47 F.4th at 295. Movant's IAC claims related to tax years 1998-2002 are therefore wholly without merit.

### ii. IAC Claims Related to Tax Year 2005

Movant next claims that Mickelsen failed to investigate, understand, and present evidence or argument to establish that Movant had a good-faith belief in the validity of his 2005 Statement, which he characterizes as a "Beard return." [16] *See, e.g.*, Mot. 7; Movant's Br. 13-15. Specifically,

---

[15] Even with credit for that withholding, Movant still owed a tax debt that he did not pay. *See* CR ECF No. 360-1 at 7-8; *Selgas II*, 475 F.3d at 698-99 (noting that Movant owed $23,303 in federal income tax for the year 2002).

[16] The *Beard* test determines whether a document is a valid tax return. In *Beard v. Comm'r*, 82 T.C. 766, 777-79 (T.C. 1984), *aff'd*, 793 F.2d 139 (6th Cir. 1986), the United States Tax Court held that, for a document to be a proper return, "there must be sufficient data to calculate tax liability; . . . the document

Movant claims that (1) Mickelsen should have called Movant to testify about his good-faith belief and to testify that he relied on Green's advice; (2) Mickelsen did not address the legality of the 2005 Statement (i.e., that it was a "Beard return") and "had an obligation to move the [G]overnment for the name of the person who claimed the 'Beard' return was not valid" for cross-examination purposes; (3) Mickelsen should have asked the Government to produce a signed copy of the 2005 Statement; and (4) Mickelsen's closing argument was "antagonistic" to Movant. *See* Mot. 7, 11; Movant's Br. 12-20.

Movant has not shown IAC in relation to his 2005 taxes. First, Movant does not show how the decision not to have Movant testify was deficient performance or prejudicial per *Strickland*. The record reflects that Mickelsen effectively presented to the jury Movant's good-faith belief in the validity of the "lawful dollar" theory and the 2005 Statement. For example, Mickelsen stated in his closing argument that Movant had a good-faith belief in the validity of the theory and relied on professionals when submitting the 2005 Statement. *See, e.g.*, CR ECF No. 208 at 54:10-55:3, 67:20-25. Michelle Selgas also testified to the sincerity of Movant's beliefs. *See* CR ECF No. 205 at 37:13-24. Thus, Movant's contention that "[t]he jury was never aware of [his] belief," Movant's Br. 13, is inaccurate. Movant therefore cannot show deficient performance or prejudice.

The Court next considers Movant's points two and three together as the arguments arise from the same document. Movant claims that Mickelsen did not address the legality of the 2005 Statement. Movant's Br. 14 ("The question of whether the 'Beard' return was valid was taken away from the jury."). Movant claims, for example, that Mickelson "did not take the opportunity" to have Green "explain the basis and legal reasoning for the 2005 Statement." *Id.* at 15. But as Movant admits, Mickelson's questioning of Green revealed that Green wrote the 2005 Statement, it was

---

must purport to be a return; . . . there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and . . . the taxpayer must execute the return under penalties of perjury."

Green's "handicraft," and Green advised Movant in his role as Movant's lawyer. Movant's Br. 15; CR ECF No. 207 at 87:21-88:10. Movant also argues that Mickelson "had the obligation to move for the prosecution to produce the signed copy" of the 2005 Statement. Movant's Br. 18-19. But as the Fifth Circuit noted on direct appeal, the lack of any signature on the 2005 Statement was not the only reason why the purported return was invalid under the *Beard* test. *Green*, 47 F.4th at 295 n.6. Instead, the 2005 Statement was not a proper return because it was "not a 'reasonable attempt to satisfy the requirements of the tax law,' and the IRS contested that it was executed under penalty of perjury." *Id.* As such, Movant has not shown that Mickelsen's alleged failure to obtain or present a signed copy of the 2005 Statement prejudiced Movant's defense. Similarly, Movant has not shown any prejudice resulting from his counsel's decision not to call the IRS agent who initially determined that the 2005 Statement was not a valid return. Movant fails to specify what favorable testimony the proposed witness could have provided. *See Gregory*, 601 F.3d at 352-53.

Finally, Movant contends that Mickelsen's closing argument "was antagonistic to [Movant's] defense" because of certain phrases Mickelsen used. Movant's Br. 16, 20. Movant claims that Mickelsen characterized Movant as a "fool" and labeled Green and other attorneys as "quacks." *Id.* at 16. He also contends that he was prejudiced by Mickelsen's reference to Government Exhibit 11 (the 2005 Statement): "This is the notorious statement drafted by John Green word for word. You can go through it if you want. It's boring." *Id.* at 15-16 (citing CR ECF No. 208 at 63:21-23). Movant asserts that Mickelsen should have used the closing argument to explain Movant's belief that the 2005 Statement was a valid *Beard* return. *Id.*

But Mickelsen did make that argument. Movant misrepresents the record to the extent that he points to excerpts, out of context, to suggest that Mickelsen failed to argue his good-faith

defense.[17] As established above, Mickelsen very effectively presented this defense. In fact, Mickelsen asserted in his closing argument that Movant's good-faith belief in the "lawful dollar" theory precluded liability. *See* CR ECF No. 208 at 55:1-60:25. For example, Mickelsen stated that he was "not saying the[] lawyers [that Movant relied on] [were] quacks by any means," but even if they were, Movant was "entitled to rely on them." *Id.* at 56:13-21. Mickelsen's reference to Movant as a "fool" is another statement that Movant mischaracterizes—Mickelsen asserted that although Movant is "stubborn" and "hardheaded," "this does not make him a criminal. It's not even a crime to be a fool." *Id.* at 66:20-67:5. Mickelsen arguably used the word "fool" in furtherance of his argument that the Government could not prove that Movant willfully violated the law. The Court therefore agrees with the Government that Mickelsen's characterizations and "rhetorical flourishes were part of a reasonable effort to persuade the jury that [Movant] had relied in good faith on legal and tax advice, even if the advice turned out to be wrong." Resp. 20. The Fifth Circuit recognized as much on direct appeal. *Green*, 47 F.4th at 295 (emphasizing that Movant presented his good-faith defense).

In sum, Movant has not demonstrated that his representation at trial was plainly ineffective or that his counsel's performance, if deficient as alleged, prejudiced him. *Strickland*, 466 U.S. at 687. As the Court has repeated at length, Movant's counsel adequately presented a good-faith defense. Movant has not shown ineffective assistance of counsel in relation to his 2005 taxes.

---

[17] Movant has consistently misrepresented the record throughout this litigation. For example, in *Green*, the Fifth Circuit highlighted how Movant misrepresented the record by claiming he brought his IAC claim to this Court's attention in Rule 33 and Rule 29 motions. *See* 47 F.4th at 296 n.7 ("[I]n his reply brief, [Movant] again misrepresents the record . . . . Such material misrepresentations are not appreciated, and we admonish counsel to act with the utmost candor in future appearances before this court or any court."). Movant did not bring his IAC claim before the Court in the Rule 33 and Rule 29 motions, even though he claimed to have done so. *Id.*

### iii. IAC Claims Related to Conspiracy to Defraud the United States

Movant next asserts that counsel ineffectively represented him on the Conspiracy to Defraud the United States charge. Movant's Br. 20-23. At trial, the Government argued that, among other things, Movant concealed income in Green's IOLTA accounts and transferred title in real property to a trust, which were overt acts in furtherance of a conspiracy to defraud the United States because they hindered the IRS's collection efforts. *Green*, 47 F.4th at 290-92. Movant contends that he used funds in Green's IOLTA accounts only to pay his family's bills and that he relied on Green's representation that Movant's actions were appropriate. Movant's Br. 21. Movant also argues that he did not transfer property to the trust in an effort hide it from the IRS but instead sold it to the trust in an arm's-length transaction. *Id.* at 22-23. Movant claims that Mickelsen performed deficiently by (1) not "call[ing] an expert witness to testify that an IOLTA [account] could be used legally to pay a client's bills"; (2) not discovering that his property was sold—not "transferred"—to the trust; and (3) not calling the trustee to testify to that effect. *Id.* at 21-23; Mot. 11.

As for the failure to call an IOLTA account expert, Movant's claim fails for the same reasons as established earlier regarding claims concerning testimony never introduced at trial. The relevant test for claims regarding failure to have someone testify applies to both lay and expert witnesses. *Day*, 566 F.3d at 538. Movant does not name the proposed expert witness, does not show that he or she would have been available to testify and would have done so, and does not describe the proposed testimony and how it would have favored Movant's defense. *See id.*; *Gregory*, 601 F.3d at 352-53. Therefore, this claim is meritless.

With respect to Mickelsen's alleged failure to discover that Movant's property was sold to a trust and his failure to call the trustee to testify to that effect, Movant does not explain what

difference it would make if the property was sold instead of "transferred." Movant's property was no longer in his name, hampering the IRS's ability to locate and seize it. *See* CR ECF No. 203 at 228:4-14. Further, Movant fails to show that the trustee was available to testify at trial and would have done so. *See Day*, 566 F.3d at 538. And perhaps most importantly, both the Fifth Circuit and the Court noted that evidence at trial showed that Movant transferred his property to a trust. *See Green*, 47 F.4th at 294 (Movant "purchased a house with gold coins and transferred it to a trust controlled by a relative."); *Selgas III*, 2020 WL 1940838, at *6 (Movant "transferred real property to a trust to avoid having real property in his name."). Movant cannot show that he was prejudiced by Mickelsen's alleged failure to (1) explain to the jury that the property was sold to a trust and (2) call the trustee to testify on that issue.

In summary, Movant fails to show ineffective assistance of counsel in relation to the Conspiracy to Defraud the United States charge.

### B. Alleged Brady Violation

Movant next claims that the Government failed to disclose exculpatory evidence in violation of *Brady v. Maryland*. 373 U.S. 83 (1963). He specifically objects to the Government's failure to produce a signed copy of the 2005 Statement or the ChipData W-2c forms.[18] Mot. 11; Movant's Br. 23-24. Movant cannot establish a *Brady* violation.

"To prevail on a *Brady* claim, 'a [movant] must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material.'" *United States v. Brumfield*,

---

[18] Movant lists other evidence in the Motion under the heading "Ground Two Facts continued – Brady violations." Mot. 11. But he appears to argue that this evidence did not exist or that the Government could not establish Movant's guilt because it failed to introduce the evidence—not that the evidence was withheld. For example, Movant claims that the Government did not introduce evidence that any tax court held he was not "entitled to withholding." *Id.* Such allegations fail to show a *Brady* violation and appear to challenge the sufficiency of the evidence—an issue that has been extensively litigated. *See Green*, 47 F.4th at 288-96.

89 F.4th 506, 513 (5th Cir. 2023) (citation omitted). For evidence to be material, "there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 513-14 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability exists when the suppression of evidence "undermines confidence in the outcome of the trial." *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011) (citation omitted).

First, Movant does not explain how the Government suppressed evidence regarding the signed 2005 Statement. *See Trottie v. Stephens*, 720 F.3d 231, 252 (5th Cir. 2013) ("Suppression exists only where a defendant did not—and could not—know about the essential facts that would enable him to take advantage of the evidence." (citation omitted)). Movant admitted in a post-judgment motion that he knew about a signed version of the 2005 Statement. *See* CR ECF No. 212 at 21; *Trottie*, 720 F.3d at 252.

Nor does Movant establish that a signed copy of the 2005 Statement was material. Even if Movant had presented a signed copy of the 2005 Statement, he offers no evidence that the jury would have found that it was a valid "Beard return" or that Movant believed in good faith that it was. Again, the 2005 Statement relied on the "lawful dollar" theory that the Fifth Circuit described as "frivolous" in a 2012 case involving the Amended 2005 Partnership Return. *MyMail*, 498 F. App'x at 390 (citation omitted). And on direct appeal of Movant's case, the Fifth Circuit noted that the 2005 Statement—signed or not—was not a valid return under the *Beard* test. *Green*, 47 F.4th at 295 n.6. Movant therefore fails to show that the signed 2005 Statement was material under *Brady*.

Finally, Movant does not demonstrate that the W-2c forms were material. According to Movant, the W-2c forms from his former employer, ChipData, showed that Movant owed no taxes

for the years 1998-2002. Mot. 11. The Court agrees with the Government that the issue of the ChipData withholding and whether Movant owed taxes for those years was extensively litigated in the underlying criminal proceedings. Resp. 16. As such, Movant fails to establish that there is a reasonable probability that turning over the W-2c forms would have resulted in a different outcome.

For all the reasons laid out above, Movant has not established a *Brady* violation.

### C. Alleged Napue Violation

Movant next claims that three Government witnesses knowingly made false statements at trial in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). Mot. 7, 11; Movant's Br. 24-25. Movant does not establish a *Napue* violation.

To prevail under *Napue*, a movant must establish that a witness's testimony was "(1) false, (2) known to be [false] by the [Government], and (3) material." *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (citation omitted). "Even assuming that the prosecution presented (or failed to correct) false testimony, the critical factor is materiality." *United States v. Stanford*, 823 F.3d 814, 839 (5th Cir. 2016). "The Supreme Court has 'defined materiality in terms of a "reasonable probability" of a different outcome.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

Movant presented the same *Napue* claims in a post-judgment motion that the Court denied. *See* CR ECF No. 274 at 4-10. He presents nothing in the current Motion to justify a different outcome. Movant fails to show that the contested testimony was false or material to his case. Thus, Movant cannot establish a *Napue* violation.

## V. CONCLUSION

For the foregoing reasons, Movant Thomas D. Selgas's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 1] is **DENIED**. By separate judgment, this case will be **DISMISSED WITH PREJUDICE**.

Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED.**

SIGNED November 10, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**

22